Thank you for hearing us here today. I'm going to real quickly point out a couple things in the order, in the trial court's order, that we think are error. Then I'll back up and try to tell you why. The first and central point here where the trial court, I think, got confused is if you look at page 12 of the order, he outlines and says the magistrate concluded TLC could not qualify as an assisted living center under the policy because TLC cannot under South Dakota law provide the medical services the policy requires for benefits coverage. I'm going to read again the last part. Cannot provide the medical services the policy requires for benefits coverage. That is completely incorrect as far as the policy doesn't require medical coverage for an assisted living center. I'll explain why in a moment. Then, and he upheld that, by the way. Then he goes on, on page 14 and says the policy requires assisted living centers to offer habilitative care such as assisting with activities of daily living. That's completely wrong. What the trial court missed the fine point distinction is that long-term care policies are not designed to be health care policies. They're designed to cover non-medical services. Doesn't mean they can't also cover some non-medical, some medical services. It simply means they're actually outlawed from restricting care or coverage to licensed health care or licensed medical care or skilled care. You know, your textual interpretation is interesting and the problem I'm having with it is in the policy it says not otherwise required to be licensed under Chapter 3412 of South Dakota statutes. And if you look at that section, it gives you like 12 different facilities, types of facilities. It gives you hospitals. It gives you, I don't remember, ambulatory care centers, a whole list of them. Correct. And so if you read that otherwise required to be licensed, it can't be something else. It has to be, it has to be what's defined as a assisted care center. And so that's the problem I'm having. Okay. First of all, the language is in the policy. If a policy holder is reading this, they see that not otherwise required to be licensed. What are they supposed to relate those words to? Well, to the statute. I mean, maybe that's asking too much, but you go to Chapter 3412 of the statute. But is an elderly policy holder that's buying this policy supposed to read that and say, well, I better read the health licensing statutes? And the language that says not otherwise required, if, I mean, the natural assumption when you read that is to relate it to something that you, something in that paragraph that precedes those words. And it says a place that provides personal care services. So at least you would, they might think, well, maybe they need to be licensed to provide personal care services, which is exactly, and I'm going to get to that, that's exactly on point. But they're not licensed, they're registered. I mean, that's the problem I'm having with this, with your argument. Okay, but the, I mean, first of all, if we just stick with the rule of contract interpretation, we read the policy first. Now, that doesn't mean that a statute can't be incorporated in some way. It can be incorporated by reference. It can be implied by law. If the statute says all policies providing this type of insurance must say this, yeah, of course, it goes in. But I'm, at the very least, if you're reading that policy language, and this court's law is, you have to apply the policy language first. You can't go to definitions that somebody else used. The policy definitions control, that's solid law in this circuit, I think. So what we're saying is, first of all, you got to look at the policy. And you don't go just pulling in licensing statutes from someplace else, even if they quoted almost word for word. But that's not a plain language argument that you're making. That's a, this is unfair or unreasonable or reasonable expectations argument. I don't, I mean, if you do a plain language, you say, go look at the South Dakota statutes, and the South Dakota statutes say something that's not favorable to your client. That's not a plain language argument. But it doesn't say, go look at the statute. Well, it says, not otherwise required to be licensed under Chapter 3412 of the South Dakota statutes. Well, maybe I'm just dumb. But if I read the words, not otherwise required to be licensed under the statutes, I'm reading that to mean no licensing is required. At a minimum, it's ambiguous. You can't say that's clear, that, oh, anybody would know that requires licensing. Well, I think it just says it's not, it's not required to be licensed as something else. So it's not an ambulatory care center. It's not a hospital. It's not an emergency care unit. It's required to be licensed as an assisted care center. The statute? Well, the statute. No, the policy. I don't think it says required to be licensed. That's how I read it. OK. Well, and you don't think there's other ways that that could reasonably be done? I think, I mean, maybe there is. But that's what I'm looking for, some reasonable arguments from you to sort of convince me. Let me get back to the, I pointed out the two places I think there was error. And, I mean, those are not accurate statements that the trial court made. But let's back up. When long-term care insurance first originated, which is relatively recent, really, in the 80s, companies first started offering them, there was a gimmick that came to the attention of lawmakers. Congress studied long-term care and found that most people are buying long-term care insurance because they're concerned about, you know, we all know our day is coming. At some point, we may need help. We may need somebody to watch us to make sure that we don't leave the stove on. We might need somebody to, you know, help us watch that we're eating, make sure there's three meals there, help us in and out of the shower, a lot of things. That's not medical care. None of those things are medical care, and that's the primary reason people buy long-term care insurance. They don't buy it for health insurance. They don't buy it for medical care. But what Congress found in a report in 1987 was companies were selling it. The main marketing point was you might need somebody to help take care of you. And then when it came around time to pay a claim, a lot of companies would point to, oh, we said nursing care. That's licensed care. You have to be getting licensed medical care so you don't qualify. And it was a deceptive practice, and it was outlawed for that reason. The National Association of Insurance Commissioners got together, put together a model act. The states adopted it, including South Dakota, saying, no, if you're going to sell long-term care, you cannot restrict it to licensed health care. You can't restrict it to licensed health care providers. You can't require that only licensed health care gets paid. And, in fact, there are statutes in South Dakota saying that. I can cite them for you if you need them. Well, my problem is that there were multiple coverages here for different levels of personal care, whatever you want to call it, not health care. And your brief asserts that the trial court misunderstood that TLC does not qualify as a provider of the home benefit because it excludes 24-hour care facility. I think that's wrong. The definition of home does include TLC. I don't recall saying that it doesn't apply because it excludes 24-hour facilities. I'll tell you what my position is. TLC can be a facility. I'm talking about home benefit versus the facility benefit. Correct. And it's mystifying to me that there weren't alternative claims filed under both. But it also seems to me logical that it's either-or, it's not both. In a particular claim, it's one or the other but not both. We did not say-the reason we didn't plead that is because it doesn't apply. We don't qualify for it. It's not even close because we're not a licensed home health care provider, and that's what the home and community care benefit requires. It requires either a licensed home health care provider, which we are not. We don't provide health care. I mean we, TLC, the provider we went to does not provide health care. No licensed medical care. We're an independent caregiver. That's licensed as a home health care provider but not associated with a facility. I'm reading it as more than your brief. There's two different places. There's two different places in the policy, and I'm sorry, I can't go quote you the brief, but I can quote you the policy. Yeah, I'm reading from the policy. We will pay benefits when you require home and community-based care or hospice services. Home and community-based care includes qualified long-term care from a home health care provider, an independent caregiver, or an adult daycare center. All of which require licensing. Are you looking at the definition? Where is it? There's two different places home health care is discussed. It's discussed back in the benefits section, and I think that's what you're reading from. And then there's a definition in the definition section talking about home and community care. Let's see. Facility benefits. We do not qualify for this, and I'm going to find it in the contract. I think it is. Your brief says the policy then defines independent caregiver as an individual who provides home health care or hospice services. DLC does not provide health care services. I think it's, we don't, or it doesn't. But if at page 9 of the policy, which is, I can't tell you the appendix number. It's page 9 of the policy. Home health care provider is defined. It says for purposes of this policy, a home health care provider is a licensed therapist, registered nurse, licensed practical nurse. That's the one. Something is out of order. There's a. I wanted to ask you to, just really quickly, before your time expires, on assisted living center, we had a conversation about that earlier, and I forgot to ask you one question. Okay. Under the statute, would you agree that TLC is not an assisted living center? If we just go to the statute. I'm sorry, I can't, even though that might sound strange. If you go to the statute, the statute says an assisted living center provides personal care. That statute, that statute. Another statute, not the one that they had some, and it's actually two other. You have to read it. It's a coordination of two other statutes. The assisted living definition you just referred to appears in. The definition. There's a definition section. Yeah, section 1.1 definitions. About several layers below that, there's a definition of health care facilities, and it defines that, which TLC doesn't meet. The next statute, I think it's 34.12.2, says health care facilities have to be licensed. It doesn't say assisted living centers must be. I don't think that's a turning point in this case. I'm not, but I have to answer your question. Sure. So the answer is no, you wouldn't concede that at this point? I think that the whole chapter, no. Okay. No. A health care facility is a facility that provides care to the, I'm out of time. No, I don't think it does apply. Okay. Thank you. Good morning, Mr. Austin. Good morning, Judge Loken, and may it please the court. I'm Brent Austin. I represent Continental Casualty Company, and I'm also using LTCG's time, even though I don't represent them because we filed a joint brief. Since Mr. Aberesk has taken the position that insurance statutes can be incorporated into an insurance policy, I think it's important to talk first about some of the insurance rules that are relevant here. The first one, and all of these come from Chapter 2006-21 of the ARSD, and it deals with long-term care insurance. It's not the health licensing statutes. It's the insurance statutes. It's clear six ADLs are required for a qualified long-term care policy. ALCs provide care for all six of those. It's undisputed that RLCs, residential living centers such as TLC, do not do that. In order to be covered, and again, this is the insurance regulation. In order to be covered, an ALC must be licensed by the state if such a license is required. In fact, facilities that are to provide assisted living services in the state of South Dakota have to be licensed. It's explicit in the statute. The only facility in the statute that deals with it is the ALC, and that's a licensed facility. Next, an ALC to be covered must provide, quote, sufficient to support needs resulting from an inability to perform activities of daily living or from cognitive impairment. That directly relates back to the policy language here, where the definition of chronically ill is an illness that renders you unable to perform ADLs without substantial assistance from another human being. Mrs. Van Dusseldorp has never claimed that she had that level of impairment, and one of the examples listed in the policy for the type of care that they're talking about is somebody being physically present to be able to remove food stuck in someone's throat when they're choking. Mrs. Van Dusseldorp is claiming that she satisfies that ADL here because TLC gave her reminders to come to dinner and to lock her walker. Now, help me with the record here. I thought CNA ended up saying that she would qualify for this level of care, and oh, by the way, TLC doesn't qualify, but here's a list of facilities you could go to that would be assisted living centers. That is partially correct. I don't believe that there was ever a determination made at the company finally about whether or not she triggered based on her personal medical condition. There is an internal document where somebody concluded that based on an initial benefit eligibility assessment that was performed by a third party, but then there was subsequent information that came in that really didn't come up in the claim process because she was in an unlicensed and uncovered facility by CNA's view, and so the claim ceased because she wanted to stay there. That would be awfully strange, though, to say, hey, this facility isn't qualified, but here's some other facilities, then to deny coverage of that. Well, there's a very practical reason for doing that. A lot of times, and this is a good example, somebody will have moved into a facility and make the claim for coverage. The benefit eligibility trigger determination can take longer than the facility eligibility determination, and you don't want to have somebody sitting in a facility that you know isn't going to be covered while you're trying to work out the benefit triggers. So that's why they do it, and I think that actually is pretty good evidence of good faith in this case. We gave her a list of facilities that would be covered. They're more expensive facilities, but they would be covered, and when she moved to such a covered facility, she was covered. The issue here has always been that TLC does not meet the policy definition of assisted living center, and because of that, TLC cannot provide the qualified long-term care called for in the policy. The definition of qualified long-term care is the definition of health care plus personal care services. It's both. There's ands in the definition. There's no or. It's necessary diagnostic, preventative, therapeutic, curing, treating, mitigating, and rehabilitative services, comma. And up to that point, there's no disagreement that that's all health care. And maintenance or personal care services. Personal care services are the ADL care that relates back to the chronically ill definition. To be chronically ill, you either have to be so impaired that you can't perform the ADL, or you have to be so severely cognitively impaired that you require continual assistance, and that's the term in the policy, continual assistance to remain safe. There's never been a claim that Ms. Van Dusseldorp met either one of those two prongs of chronically ill, which is both the benefit trigger and the policy, and it's also the predicate for the definition of qualified long-term care. Qualified long-term care is that definition I just read to you that is necessary to treat a chronically ill individual that's been certified as such by a health care professional. I mean, ALCs are licensed health care agencies, and they're licensed to maintain, furnish, or offer for the hospitalization, nursing care, or supervised care for the sick or injured. It's a health care facility. And the definition of an assisted living facility within the statutes is within a health care facility section of the statute. Assisted living centers undisputably provide extensive health care services, and it's the nature of the facility that defines the facility section of the coverage analysis. Now, Mr. Averis raised a situation where somebody, I gather, could trigger coverage under the benefit triggers because they're ADL impaired. But you have a facility definition over here, and the facility definition says even though you trigger coverage, we're only going to pay for skilled care that you get in this facility. That, in fact, is what Medicare does. And it is, in fact, what I'm not aware of any private insurance company that I've ever been associated with in the last 20 years that did do it. This policy certainly doesn't do it. If you trigger coverage and you're in a facility that meets the definition of the policy, all the services that you receive, all the costs that you incur in that facility for qualified long-term care are paid. And the reason it says that is because the statute, the South Dakota statute, and the IRS statute before it, which created this tax-qualified regimen, states that to be a tax-qualified policy, you can only provide qualified long-term care. Can I ask you a question? Certainly. This is how I understand your argument, that TLC is only authorized by South Dakota law to provide a certain level of care, which basically, maybe in layman's terms, would be food, shelter, and laundry, essentially. Essentially. And it's registered with the state of South Dakota, and that's all that institutions that are so registered are authorized to provide. Correct. While the policy requires a facility which is sort of kind of one step up from that, provides something beyond food, shelter, and laundry. Correct. Would that be essentially correct? Essentially. I mean, TLC was permitted to provide limited assistance with three of the six policy ADLs, but it's limited assistance, and the limited assistance, I think, is illustrated in this case, because Mrs. Van Dusseldorp was receiving very limited assistance. She was, for dressing, she was receiving help with fastening an article of clothing. For bathing, she probably comes the closest to, she probably had the most hands-on care for that, but even that was limited, and it was limited pursuant to directions from the Department of Health, which advises RLCs, including TLC, that for those ADLs, you can only provide very limited amounts of assistance. And for three of the ADLs in the policy, the guidance from the Department of Health is that you are not permitted to assist in any way with those ADLs. And that's because TLC, I mean, it's in its name, it's an independent living center. There's a progression of long-term care, and generally people who are, who require a more supervised, structured environment to help with food, because they're not as, aren't as capable of preparing their meals as they used to be. So there's meals available. There's, you know, room and board, and there's laundry, because they no longer can live purely independently, but they are relatively independent. And the language in the regulation speaks to that. And the forms that she was at, that the facility filled out for her year after year, asked a whole series of 20 or more questions. Are you able to independently do this, that, or the other thing? Every single box was either checked yes or not applicable. She never said no, the facility never said no to any question about independence in those particular submissions. But yes, fundamentally, the policy has benefit triggers, and it has facility definitions. And the issue here is that the facility definition of assisted living center could not be satisfied by TLC because of the nature of its licensing. And the issue of knowledge about the license. Well, what, did it qualify as a home, a facility for the home? I think it would. I think it would. Because it's an independent. The definition of home health care provider says that a licensed nurse or other licensed professional can satisfy the definition, but it also says that an unskilled person can provide essentially unskilled care. That's right in the definition. So TLC would meet that definition of home health care provider, and it would meet the definition of home both because it's a home, it's a resident, and because it provides residential care, and that's specific in the policy that that's what it is. On the license issue, this is a heavily regulated product. It's a tax-qualified product. It's purchased because it has tax benefits that have never been at issue in this case. And the fact that the licensing statute is referenced in the policy is reflective of the fact that it's alerted the policyholder that a license is required. I think it also alerts the policyholder that there's a significant licensing issue because it's talking about health care facilities. But if you step back and you don't want to reach that issue, the absence of a license is a basis to deny the claim. But whether or not that on its own is a basis to deny the claim, the only way the TLC could have provided the care that was called for in this policy is if it had that license. Because without that license, it couldn't handle people who are unable to take care of their ADLs. Another provision from the insurance statute requires that ALCs must be authorized to administer medication to patients at the order of a physician. That's health care. There's a difference between medication assistance, your husband or wife reminding you to take your medicine, and actual medication administration, which is done by a health care professional. And RLCs cannot do that. And an ALC must do that under the insurance regulations in order to be covered. I want to flag a couple things very quickly because I'm running out of time. There are a number of issues that the appellant has raised on appeal, even for the first time in their reply brief that weren't raised below, and I just want to run through the list because I think they're important. Bad faith, statutory misrepresentation, and the request for declaratory relief were all the subject of my summary judgment motion below. They were all addressed by the report and recommendation of the magistrate judge. There were no objections to them made to Judge Viken. Judge Viken entered judgment in Continental Casualties and LTCG's favor on all counts, and that final judgment is the subject of the appellant's appeal. I believe the only mention of bad faith and the other tort claims might be in the jurisdictional statement of the opening brief, and then finally at the end of the reply brief. These issues have not been addressed or challenged in any way by the appellant in this case, and those judgments, I respectfully suggest, should be affirmed, irrespective of the question of contract interpretation. Obviously, I think the judgment should be affirmed on contract interpretation, but to the extent that there is an issue of contract interpretation, the fact that two federal judges and the State Department of Insurance have all agreed with Continental Casualties' interpretation of this provision and not with Ms. Van Dusseldorf's, I think fairly demonstrates that, at the least, Continental had a reasonable position and, therefore, there should not be claims for bad faith or statutory misrepresentation in declaratory relief, essentially just relates back to the other issues in the case anyway. In addition to that, the first two argument headings in the reply brief, I believe, were raised for the first time on appeal. That would be this level of care argument that I mentioned before, where you trigger but will only pay for the skilled care. And then there's discussion of a tax case. There's never been discussion of tax cases before the tax implications of this dispute on Ms. Van Dusseldorf, but obviously these definitions mostly originate from the IRS code. And the code that the tax case that Mr. Abera cites begins, it's 26 U.S.C. 7702B, little a, little one, and it says a qualified long-term care insurance contract shall be treated as an accident and health insurance contract. In little two, it states that amounts paid under such a contract shall be treated as reimbursement for expenses actually incurred for medical care. An ALC is a medical facility, a health care facility, and that's what was covered by this policy. Thank you. Thank you, counsel. I'll give you a minute. The South Dakota standards he's talking about in the insurance regulations, saying that they must provide services to licensed assisted living facilities, those are explicitly the minimum standards. Minimum. It's explicitly said throughout the insurance code. The director has no authority to issue anything other than minimum standards. In other words, the parties can contract for more if the contract allows that. Number two, Continental did determine eligibility. There was no dispute here. She meets every one of the requirements. I've outlined it in the brief specifically. You can't use definitions like severe cognitive impairment, or you can't use that term without looking at the definitions. It does not require what they are saying it does if you look at the definition. It's much less than you and I would call severe. Next, the qualified long-term care definition. What they're doing is they're saying you have to meet all nine categories of care that are covered here in order to collect for any of them. That would bar a lot of the coverage. I didn't hear them argue that. No, that is what they're saying. Your time is up, and you're now refuting something that I don't think was argued. Policy, page 14, is what you were looking for. Pardon? The policy at page 14 is what you were looking for, 13 and 14. Thank you. Independent caregiver certification benefit. If you read that, you're going to see you need a license. Thank you. Thank you, counsel. Case has been thoroughly briefed and well argued, and we'll take it under advisement. Thank you.